**BEIDLER & BOOKMYER CO., Inc., v. UNIVERSAL INS. CO.**

District Court, S. D. New York.
April 21, 1943.

Greenhill & Greenhill, of New York City (Simon Greenhill, of New York City, of counsel), for plaintiff.

Bigham, Englar, Jones & Houston, of New York City (Francis X. Nestor, of New York City, of counsel), for defendant.

HULBERT, District Judge.

These are cross-motions for summary judgment. Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

This is the second lawsuit brought by the plaintiff against the defendant to recover brokerage commissions alleged to have been earned after August 5, 1941.

In the first action summary judgment was granted in defendant's favor. D.C., 46 F.Supp. 806, affirmed on March 6, 1943, 2 Cir., 134 F.2d 828.

This court disapproves of the growing tendency to supplement the issues of fact on motions of this character with voluminous controversial affidavits and letters addressed to the court, which frequently involve a greater amount of labor than would be entailed adducing the facts (with more opportunity for restriction) upon an actual trial.

Plaintiff was the broker on two policies of insurance issued by the defendant.

The first, known as an open ocean cargo policy issued in 1932, insured shipments of merchandise from foreign ports, coverage to become effective immediately upon the commencement of transportation. The assured warranted, however, that reports of such shipments would be transmitted to defendant's general manager as soon as practicable after it received knowledge thereof. The policy provided that such reports were to be sent to the plaintiff, who, in turn, was to submit them to the defendant. At that time the plaintiff was the broker for the assured.

On August 5, 1941, the assured wrote a letter to the defendant designating the firm of Boynton Brothers & Co., as its broker in place and stead of plaintiff.

It is only necessary to emphasize at this point that as to the first policy the trial judge held that the assured had the right at any time, for any reason, or for no reason at all, to change brokers, and that the plaintiff rendered no service and earned no commission after the date of the designation of a superseding broker.

In affirming the judgment below, the Circuit Court held that the letter of August 5, 1941, was, in effect, a cancellation of that policy.

The second policy upon which this action is based, was known as an open war risk insurance policy. Apparently plaintiff was not the broker in effecting this insurance; it was negotiated between the insurer and the assured. It was first issued in December 1938 and took the place of a war risk endorsement which, up until its cancellation in September 1938, had been a part of the open ocean cargo policy.

This war risk insurance policy stated on its face that it was a "separate and wholly independent" contract and not subject to any of the terms and conditions of the open ocean cargo policy except such as may have been incorporated therein by reference.

As the letter of August 5, 1941, referred specifically to the first policy by number, the plaintiff argues that his discharge as broker on that policy did not affect his status as broker on the war risk policy. On the other hand, the defendant asserts that the letter of August 5, 1941, was intended to and did discharge the plaintiff as broker on both policies.

Each of the parties submits lengthy affidavits in support of their respective contentions. If they had been able to agree upon a stipulation as to the facts, it might have simplified their task, as well as mine.

However, upon the papers before me it appears that, although the two contracts of insurance in question are "separate and wholly independent", in so far as the rights of the plaintiff are concerned, there was incorporated into the war risk insurance policy two very important provisions of

the open ocean cargo policy: (1) That the war risk insurance policy covered only those shipments which were insured against marine risks under the open ocean cargo policy, and (2) that clause relating to the reports of shipments.

Since the war risk policy covered only those shipments which were insured under the open ocean cargo policy, and since the reports of shipments submitted to the defendant under the open ocean cargo policy were to be deemed the reports under the war risk insurance policy, when the former policy was "cancelled" the broker had no duty to perform with respect to reporting shipments under the war risk insurance policy.

In his opinion in the first action between these parties, Judge Bright stated (46 F. Supp. page 807): "Commissions were not earned merely by the issuance of the policy. Commissions would only be earned after the cargo was at risk and only then after notice by plaintiff to defendant. To earn a commission some act of the broker subsequent to the writing of the policy was requisite and none was here so earned by plaintiff after its discharge."

It is alleged by the plaintiff that it did transmit two reports after August 5, 1941, for which it was not paid; the defendant retorts that this was due to an error of an accountant and that no further reports were made by plaintiff thereafter.

This circumstance, and some others, might, ordinarily, create such a doubt in my mind whether there was a triable issue of fact as to require proof. But, in view of the decision of the trial judge in the prior case, the affirmance thereof by the Appellate Court, and the apparent determination on the part of counsel for both parties to have these motions decided by me as a matter of law, the disposition thereof will be made from that viewpoint.

Inasmuch as the plaintiff was discharged as the broker and its successor thereafter, presumably, transmitted the reports required under the terms of the first policy, and as such reports were also deemed to be reports under the second policy, there were no reports for the plaintiff to transmit, no duties for the plaintiff to perform, and it cannot collect commissions on the strength of the reports submitted by the other broker.

Moreover, I think it is a fair presumption that, since plaintiff was relieved of that duty under the first policy, and since Judge Bright held that nothing had been earned and nothing was due under that policy, plaintiff was charged with knowledge that its dismissal under the first policy effected a similar dismissal under the second policy, and, except possibly as to the two reports furnished as above stated, nothing was earned and nothing is due.

It is evident, therefore, that whatever may have been the reason for separating the war risk clauses from the open ocean cargo policy and embodying them in a separate contract of insurance, the parties fully intended to have the same broker on both the open ocean cargo policy and the war risk insurance policy, and when the plaintiff as such broker was substituted by another broker on Aug. 5, 1941, such substitution applied to both policies.

Defendant's motion for summary judgment is granted and plaintiff's motion is denied. Settle order on notice.